## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

MICHAEL SMART, *individually and on behalf of all others similarly situated*,

        Plaintiff,

v.

BOSE CORPORATION,

        Defendant.

Case No. 5:21-cv-00142-JSM-PRL

**CLASS ACTION**

## DEFENDANT BOSE CORPORATION'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Submitted by:

Ashley Bruce Trehan, FBN 0043411
ashley.trehan@bipc.com
Jordan D. Maglich, FBN 0086106
jordan.maglich@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401 E. Jackson Street, Suite 2400
Tampa, FL 33602
Tel: (813) 228-8180
Fax: (813) 229-8189

Aarti Reddy, CA Bar No. 274889
(admitted *pro hac vice*)
areddy@cooley.com
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Tel: (415) 693-2000
Fax: (415) 693-2222

*Attorneys for Defendant Bose Corporation*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ...................................................................... 3

III.    LEGAL STANDARDS ............................................................................. 4

    A.    Pleading Standard ......................................................................... 4

    B.    The FSCA ...................................................................................... 5

IV.     ARGUMENT .......................................................................................... 6

    A.    Plaintiff Fails to Meet the Rule 8(a) Pleading Standard ................ 6

    B.    Plaintiff Fails to State a Claim Under Rule 12(b)(6) ..................... 9

        1.    The FSCA Does Not Apply Because the Information
             Allegedly Intercepted Does Not Qualify as "Content." ............. 9

        2.    The FSCA Does Not Apply Because Session Replay
             Software Is Not a "Device" Under the Statute. ...................... 14

        3.    The FSCA Does Not Apply Because Plaintiff Consented
             to the Alleged Interception of Data. ....................................... 18

        4.    Canons of Statutory Construction Warrant Dismissal of
             Plaintiff's FSCA Claim. ......................................................... 21

V.      CONCLUSION ..................................................................................... 25

Defendant Bose Corporation ("Bose") respectfully moves the Court to dismiss Plaintiff's First Amended Class Action Complaint (D.E. 26 ("FAC")) pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to put Bose on sufficient notice of the claims against it and failure to state a claim for relief under the Florida Security of Communications Act ("FSCA").

## I.    INTRODUCTION

Plaintiff and his counsel seek to peddle an interpretation of Florida law that would criminalize everyday technology that seeks only to improve the functionality of websites on the Internet. This action is one of 30+ copy-and-paste lawsuits throughout Florida filed by the same plaintiffs' counsel, each claiming that the use of "session replay" software on different consumer-facing websites "intercepted" the plaintiff's "communications" with the website in violation of Florida's criminal wiretapping statute. (*See* D.E. 12 (the "Related Cases").) Like the initial complaints, the amended complaints in the Related Cases are virtually identical, but for a handful of paragraphs relating to the parties themselves. Because of this purposeful strategy, the FAC contains ***no details*** about Plaintiff Smart's actual interactions with Bose's website.

The FAC instead spends considerable time villainizing session replay software, referring to it as "spyware" no fewer than 21 times, distinguishing it from "a traditional website cookie, tag, web beacon, or analytics tool" (which allow for cross-site monitoring not alleged here), and arguing that it provides access to "information otherwise unknowable" and "implicate[s] privacy concerns in a

manner different from traditional intrusions." But even the articles cited by Plaintiff concede that session replay technology was designed "to help website operators understand how visitors interact with their site and to identify user-interface problems." The sheer number of lawsuits itself demonstrates how ubiquitous and widely dispersed session replay software is. It is nonsensical that a company would not try to understand how its users interact with its website. The very purpose of doing so is to improve the commercial performance of the company's business.[1]  Moreover, Plaintiff does not explain how the types of information allegedly intercepted through session replay software implicate any novel or unique privacy concerns compared to the traditional analytics tools. Nor does Plaintiff allege that Defendant acquired any personally identifiable information ("PII") or that the session recordings can be traced back to any individual visitor.

As set forth below, Plaintiff's claims suffer from numerous independent fatal defects. **First**, the FAC still fails to satisfy Rule 8 pleading requirements because its barebones allegations are insufficient to put Bose on adequate notice of the claims against it. **Second**, the FAC does not allege, as Plaintiff must, that Bose recorded the substance of any of Plaintiff's communications. **Third**, the session

---

[1] Indeed, a California court has recently agreed that session replay technology is a "**tool**" that "allows [a website operator] to record and analyze its own data in aid of [its] business." *See Graham v. Noom, Inc.*, No. 20-cv-06903, 2021 WL 1312765, at *5 (N.D. Cal. Apr. 8, 2021) (Beeler, M.J.) (emphasis added) (dismissing session replay wiretap claims brought under California law); *Yale v. Clicktale, Inc.*, No. 20-cv-07575, 2021 WL 1428400, at *1 (N.D. Cal. Apr. 15, 2021) (Beeler, M.J.) (same); *Johnson v. Blue Nile, Inc.*, No. 20-cv-08183, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (Beeler, M.J.) (same).

replay software at issue falls outside of the FSCA's definition of "device"—a required element. **Fourth**, Plaintiff assented to Bose's Privacy Policy by visiting its website, and thus consented to the collection of his data as disclosed in that Policy. **Fifth**, Plaintiff asks this Court to interpret the FSCA so broadly that it would create unprecedented liability for countless website operators simply for using a commonplace technology. This unreasonable interpretation finds no support in the statutory text, the legislative intent, or fundamental policies underlying the role of the judiciary.

## II.   FACTUAL BACKGROUND

The FAC is filled with extraneous allegations about the hypothetical ills of session replay "spyware," but the relevant allegations remain devoid of any detail as to Plaintiff's actual interactions with www.bose.com (the "Website"). Specifically, Plaintiff claims that in eight visits to the Website "[o]ver the past year," he took certain "actions" that sent "electronic communications in the form of instructions to [Bose's] computer servers." (FAC ¶¶ 25, 28.) He further alleges, "[u]pon information and belief," that Bose used session replay software "to contemporaneously intercept" these "actions," which purportedly included "mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, pages and content viewed by Plaintiff, and scroll movements, and copy and paste actions." (*Id.* ¶¶ 28, 37.) Parroting the FSCA's elements, Plaintiff alleges that he "reasonably expected" his interactions with the Website to be private, and that he did not "consent" to any "interception." (*Id.* ¶¶ 29–30, 52–55.) But the FAC

is most notable for what it does not allege: what he clicked, what he viewed, what (if anything) he typed, what (if anything) he copied and pasted, why he expected his browsing habits on a retail website to be private, or how the supposed interception caused him any harm.

Plaintiff also offers conclusory and speculative allegations that at least one purpose of this software is "to market Defendant's services and goods to Plaintiff and the Class members" (*id.* ¶ 65), purportedly "for its own financial gain" (*id.* ¶ 8). However, again, the FAC is devoid of the critical factual support for these assertions, such as, that he received unsolicited marketing from Bose, or that Bose disseminated or sold his information to any third-party.

Based on these allegations, Plaintiff asserts a single count for violations of FSCA Sections 934.03(1)(a) and (d), on behalf of himself and a putative class of all persons residing in Florida who visited the Website and whose electronic communications were purportedly intercepted by or on behalf of Bose without their prior consent. (*Id.* ¶¶ 67, 77-91.) He seeks injunctive relief and statutory damages under Section 934.10 of $100 a day for each day of violation or $1,000, whichever is higher. (*Id.* ¶ 89, 91.) Plaintiff sued Bose on February 10, 2021, and Bose removed to this Court on March 9, 2021. (D.E. 1.) On April 15, 2021, Bose moved to dismiss this action (D.E. 14), and instead of responding to that motion, Plaintiff filed his Amended Complaint on April 30, 2021. (D.E. 26.)

## III.   LEGAL STANDARDS

### A.    Pleading Standard

"To survive a motion to dismiss, a complaint must [] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, 489 F. Supp. 3d 1303, 1306 (M.D. Fla. 2020) (Moody, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Legal conclusions, though, 'are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 664). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**B.    The FSCA**

The civil remedy provision of the FSCA requires Plaintiff to show that Bose engaged in conduct prohibited by the FSCA. Fla. Stat. § 934.10(1). Plaintiff alleges that Bose violated two sections of the FSCA, which prohibit "intercepting" communications and "using" them. (FAC ¶¶ 78–79.) Section 934.03(1)(a) prohibits "[i]ntentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept any wire, oral, or electronic communication;" and Section 934.03(1)(d) prohibits "[i]ntentionally us[ing], or endeavor[ing] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of [the

FSCA].” The FSCA defines “***intercept***”[2] as “the aural or other ***acquisition*** of the ***contents*** of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other ***device***.” Fla. Stat. § 934.02(3).[3] The FSCA does not apply if “all of the parties to the communications have given prior ***consent*** to such interception.” Fla. Stat. § 934.03(3)(d). The FSCA “was modeled after the Federal Wiretap Act” (“ECPA”), and, thus, “Florida follows federal courts as to the meaning of provisions after which Chapter 934 was modeled.” *Minotty v. Baudo*, 42 So. 3d 824, 830–31 (Fla. 4th DCA 2010).

## IV.   ARGUMENT

### A.   Plaintiff Fails to Meet the Rule 8(a) Pleading Standard

The FAC does not satisfy the minimum requirement under Rule 8 to allege “a short and plain statement of the claim” and thus fails to provide Bose with “fair notice of what the . . . claim is and the grounds upon which it rests.’” *Am. Dental Ass’n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). Even given the opportunity to amend, Plaintiff again merely recites the FSCA’s elements and exceptions. These allegations are deficient. *See Twombly*, 550 U.S. at 555 (“[A] plaintiff’s . . . formulaic recitation of the elements of a cause of action will not do.”); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1031 (N.D. Cal. 2014) (dismissing ECPA claim after finding “this otherwise conclusory assertion” that defendant “intercepted” electronic communications to be insufficient).

---

[2] Except as noted, all citations and quotations are omitted, and all emphasis is added.
[3] Several of these key terms are also defined, as discussed herein.

**Unsupported "information and belief" pleading.** The FAC's most fundamental allegation, that Bose used session replay software to "intercept the substance of Plaintiff's electronic communications," is still pled exclusively "[u]pon information and belief," without any factual support. (FAC ¶ 37.) The Eleventh Circuit squarely rejects this pleading tactic: allegations made "upon information and belief" are not "enough [] to nudge [a] claim . . . across the line from conceivable to plausible." *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013); *see also Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) ("[F]or purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief.'"); *Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (dismissing case where the "Amended Complaint [was] replete with conclusory allegations, made upon Plaintiff's 'information and belief,' none of which [were] supported by any facts"). The FAC should be dismissed on this basis alone.

**Failure to allege "content."** To state a claim under the FSCA, Plaintiff must allege that Defendant intercepted the "content" of his communication, i.e., "information concerning the substance, purport, or meaning of that communication." Fla. Stat. §§ 934.02(3), (7). Plaintiff fails to do so. In fact, the FAC contains only three paragraphs with information unique to Plaintiff Smart. (FAC ¶¶ 19 (his residence), 25 (the number of times he visited the Website), and 26 (his last visit to the Website).) The rest of the FAC pleads amorphous allegations drafted to apply to every plaintiff in each of the 30+ Related Cases. (*Compare* FAC

7

*with* Exhibit A to Defendant's Unopposed Motion for Judicial Notice ("RJN"),
Amended Complaint, *Londers v. Intel Corporation*, Case No. 5:21-cv-182-JSM.)
Specifically, Plaintiff alleges that by using session replay software, Bose
intercepted his "actions" on the Website, which may have included his "mouse
clicks and movements, keystrokes, search terms, information inputted [] [], pages
and content viewed [] [], scroll movements, and copy and paste actions." (FAC
¶ 28.) But Plaintiff provides no further detail about even one of these "actions":
***what*** keystrokes, ***what*** pages and content viewed, ***what*** terms searched (if any),
***what*** information input (if any), or ***what*** information copy-pasted. (*See* FAC ¶¶ 7,
12, 28, 37, 42.)[4] This dooms his claim, as without such allegations, Bose is not on
"fair notice" of the claims against it, such that it can even cite to the applicable
"content" law, *see Am. Dental*, 605 F.3d at 1288 and *infra*, Section IV.B.1., and the
Court cannot assess whether such information constitutes "content." *See Byrd v.
Aaron's, Inc.*, No. 11-101, 2017 WL 4326106, at *15 (W.D. Pa. Aug. 4, 2017), *report
and recommendation adopted*, 2017 WL 4269715 (W.D. Pa. Sept. 26, 2017) ("An
examination of the specific content and character of any given screen shot or
keystroke is [] critical to a determination of liability.").

**Failure to allege "use."** Plaintiff purports to bring a claim under Section

---

[4] The FAC's sole purported "example" of "information inputted during [a] live website
session" is ***not*** information specific to Plaintiff Smart or Bose's session replay provider.
(FAC ¶ 12.) Rather, the "Session Replay Dashboard" depicted is from the session replay
provider ***FullStory*** (*see id.*)—***not ContentSquare***, who licenses its session replay
software to Bose (*see* D.E. 22-1 ¶¶ 3, 6). This allegation thus has no bearing on what (if
any) information Plaintiff input on the Website.

934.03(1)(d) of the FSCA, which prohibits the "use" of intercepted electronic communications. Yet Plaintiff fails to allege ***how***—if at all—Bose actually ***used*** any intercepted communications. Rather, Plaintiff merely states in conclusory fashion: "Upon information and belief, Defendant used or attempt [sic] to use the electronic communications it intercepted in order to market its services and goods to Plaintiff and the Class members." (FAC ¶ 87; *see also id.* ¶ 65.) The only other references to "use" in the FAC merely "indicate[]" the ways in which the information "***could*** [] be used by Defendant" (*id.* ¶¶ 35, 46, 65)—not that Defendant actually used the information. These unsupported allegations are nothing more than a "threadbare recital" of an element of Plaintiff's claim and are clearly insufficient under Rule 8. *Mann*, 713 F.3d at 1315; *Iqbal*, 556 U.S. at 678.

**Failure to allege future use.** Finally, Plaintiff's claim for injunctive relief should also be dismissed as he never alleges an intent to use the Website in the future. *See Graham*, 2021 WL 1312765, at *8 (dismissing claim for injunctive relief where plaintiff failed to allege intent to use the platform in the future).

### B.   Plaintiff Fails to State a Claim Under Rule 12(b)(6)

#### 1.   The FSCA Does Not Apply Because the Information Allegedly Intercepted Does Not Qualify as "Content."

Even if the FAC could survive these threshold pleading deficiencies, it is incurably defective under Rule 12(b)(6). That is because none of the electronic communications allegedly intercepted by Bose qualify as "content" under the FSCA. "Content" is defined as "any information concerning the substance, purport,

9

or meaning of that communication." Fla. Stat. § 934.02(7).[5] But not all electronic communications reveal "content." *See Figueroa v. State*, 870 So. 2d 897, 901 (Fla. 5th DCA 2004) ("no 'contents' were intercepted" where "there were no messages or quanta of information concerning the 'substance, purport, or meaning of the communication' that were procured"). Courts interpreting the ECPA distinguish between "a record or other information pertaining to a . . . customer" (referred to as "record information") and the substantive content of the communication itself. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("the term 'contents' refers to the intended message conveyed by the communication, and does not include record information"). Here, Plaintiff alleges that Bose intercepted the "substance" of his "communications" with the Website, including: (1) his movements on the Website ("mouse clicks and movements," "scroll movements," and "pages and content viewed"); and (2) information voluntarily input ("keystrokes," "copy and paste actions," "search terms," and "information inputted by Plaintiff"). (FAC ¶ 37.) But none of this information reveals any substantive content.

**Movements on the Website.** Bose's alleged tracking of Plaintiff's unspecified mouse clicks, scroll movements, and pages and content viewed on the Website fall outside the purview of the FSCA because they do not convey the substance of any communication. This tracking of movements is the electronic

---

[5] The ECPA and its counterpart, the Stored Communications Act ("SCA") define "content" identically to the FSCA. *See* 18 U.S.C. §§ 2510(8), 2711(1) (content "includes any information concerning the substance, purport, or meaning of that communication").

analogue to record information Bose could have received via an in-store security camera at a brick-and-mortar store. In *Minotty*, the Florida Fourth District Court of Appeal confronted this situation and found no interception where hidden security cameras were installed at certain doctors' offices and recorded footage of the doctors alone and with their patients. 42 So. 3d at 828, 830–32. The *Minotty* court concluded that silent surveillance videos of the doctors' physical movements did not capture "content" as defined by the FSCA, because they did "not convey the *substance* of a particular communication." *Id.* at 830 (emphasis in original). Similarly here, the FAC itself makes clear that Plaintiff's purportedly captured movements are not substantive. (*See* FAC ¶ 12 (depicting indiscriminate scribbling on a screenshot of an unidentified website).)

That Plaintiff claims to have "viewed" certain "pages" on the Website does not alter this analysis. *See In re Zynga*, 750 F.3d at 1107–09 (the webpage a user views is akin to an address and does not constitute "content"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (finding no "content" and dismissing argument "that the user was communicating he wanted to view that webpage"). Indeed, this same type of information is regularly collected by website operators, including this Court. *See Privacy Policy,* Middle District of Florida, www.flmd.uscourts.gov/privacy-policy (last visited June 3, 2021) ("If you visit our site . . . we collect and store the following information: . . . . The pages you visit.").

Finally, the FSCA's text reinforces that such movements fall outside the FSCA's purview. The 1988 amendment adding "electronic communications" to the

FSCA specifically excluded "[a]ny communication from an electronic or mechanical device which permits the ***tracking*** of the movement of a person or an object." Fla. Stat. § 934.02(12)(c). Thus, the plain language of the statute exempts the same "tracking" that allegedly gives rise to this lawsuit.

**Information voluntarily input.** To the extent Plaintiff's allegations can be construed to allege that he voluntarily input ***any*** information into the Website through "keystrokes," "copy and paste actions," and "search terms" (*see* FAC ¶¶ 28, 37), Plaintiff fails to identify ***what information*** (if any) he input. Bose (and the Court) are therefore left to guess whether it constitutes "content" under the FSCA. However, numerous types of information commonly input on a consumer-facing website are deemed non-substantive "record information" under analogous wiretap laws, and are thus not protected by the FSCA:

- Name, address, and email address. *See In re Zynga*, 750 F.3d at 1107–09 (username and webpage address do not constitute "content" under ECPA); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) (name, email address, Google account name, address, and telephone number do not constitute "content" under SCA); *Obodai v. Indeed, Inc.*, No. 13-80027, 2013 WL 1191267, at *3 (N.D. Cal. Mar. 21, 2013) (information input when a user creates a Gmail account does not constitute "content" under SCA).

- "Login" information. *See Brodsky v. Apple Inc.*, No. 19-cv-00712, 2019 WL 4141936, at *6–7 (N.D. Cal. Aug. 30, 2019) ("login activities," including usernames and passwords, are not content under CIPA); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083–84 (N.D. Cal. 2015) (usernames and passwords are not "content" under ECPA).

- Personal information. *See Chevron Corp. v. Donziger*, No. 12-mc-80237, 2013 WL 4536808, at *6 (N.D. Cal. Aug. 22, 2013) ("identifying information associated with the subscriber," including date of birth, occupation, industry, and personal interests, is not "content" under SCA).

- Certain keystrokes. *See Byrd*, 2017 WL 4326106, at \*5, 15 (distinguishing "keystrokes that correspond to a communication," like an email, from "those that do not," like "entries to a computerized calendar or utilizing a word processing application," and requiring an examination of the specific content to determine liability).

Plaintiff's attempt to repackage his claim as "commands" transmitted "in the form of instructions" to Bose's servers (FAC ¶ 28) merely underscores that the allegedly intercepted information did not convey the "substance" of any "communication." *See* Fla. Stat. § 934.02(7). Such "commands" are equivalent to "dialing, routing, addressing, or signaling information" that are routinely deemed non-content. *See, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (affirming dismissal of wiretap claim and distinguishing URLs that "may convey 'substantive information'" from those that convey "mere 'dialing, routing, addressing, or signaling information'"); *Gilday v. Dubois*, 124 F.3d 277, 296, n.27 (1st Cir. 1997) (analogizing "call detailing," which identifies the caller, the number called, and the date, time, and length of the call, to routing and signaling information associated with pen registers, and finding it outside the ambit of the Wiretap Act); *see also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (comparing pen register cases to "***instructions***" that are "voluntarily turned over" to a computer server for the "purpose of directing the routing of information"); *Figueroa*, 870 So. 2d at 901 (holding that phone numbers dialed and received are not content under the FSCA). The weaknesses in Plaintiff's claim are further highlighted by *O'Brien v. O'Brien*, 899 So. 2d 1133 (Fla. 5th DCA 2005), the single case cited in Plaintiff's original Complaint. (*See* D.E. 1-1 at ¶ 2.)

There, a wife installed (actual) spyware on her husband's computer, which secretly captured the **substance** of his communications—namely, "chat conversations," "instant messages," and "e-mails." *O'Brien*, 899 So. 2d at 1134. This is a far cry from this case, where Plaintiff fails to allege that he had **any** substantive communication on the Website.

2.    **The FSCA Does Not Apply Because Session Replay Software Is Not a "Device" Under the Statute.**

To state a claim, the FSCA requires that interception occur "through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3). "Electronic, mechanical, or other device" is defined in part as "any device or apparatus which can be used to intercept a wire, electronic, or oral communication." Fla. Stat. § 934.02(4). But, for two reasons, and contrary to Plaintiff's conclusory assertion (FAC ¶ 84), session replay software falls outside the FSCA's definition of "device."

<u>**Software alone is not a "device."**</u> Plaintiff incorrectly asserts that "courts unanimously hold that software constitutes a 'device' for purposes of applying wiretap statutes." (*Id.*) Not so. Numerous courts have correctly found that software and other non-tangible computer processes (like servers) are not "devices" under the wiretap statutes. *See Potter v. Havlicek*, No. 3:06-cv-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (software "alone cannot be used to intercept communications. It must be installed in a device, such as a computer, to be able to do so"); *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, No. 18-2315, 2019 WL 2233535, at *23 (D. Md. May 23, 2019) (a "server is not a 'device' used for interception" under ECPA); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No.

14

07-1029, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007) ("The drive or server on which an e-mail is received does not constitute a device for purposes of the Wiretap Act."); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (same).[6]

**The Business Extension Exception applies.** Session replay software also does not meet the definition of a "device" under the FSCA, because the definition of "device" does not include "equipment . . . [f]urnished to the subscriber . . . by a provider of . . . electronic communication service in the ordinary course of its business and being used by the subscriber . . . in the ordinary course of its business" (the "Business Extension Exception"). Fla. Stat. § 934.02(4)(a)(1).[7] The Business Extension Exception has two elements: (1) the equipment must be furnished by a provider of electronic communication service ("ECS") in the ordinary course of its business; and (2) the equipment must be used by the subscriber of the ECS in the ordinary course of its own business. *See* Fla. Stat.

---

[6] Plaintiff's authorities (FAC ¶ 84) are easily distinguishable, as each involved spyware ***installed*** by a third party ***on the sender's computer*** to monitor communications with others. *See United States v. Barrington*, 648 F.3d 1178, 1202–03 (11th Cir. 2011) (hypothetically acknowledging that software installed in computers by a third party could constitute a "device" under the Wiretap Act, but not so finding); *Luis v. Zang*, 833 F.3d 619, 630, 634 (6th Cir. 2016) (spyware installed by husband on wife's computer to monitor her communications with others); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1087 (manufacturers pre-installed software on mobile phones to monitor communications with others); *Klumb v. Goan*, 884 F. Supp. 2d 644, 661–62 (E.D. Tenn. 2012) (spyware installed by wife on husband's computer to monitor his communications with others); *Shefts v. Petrakis*, No. 10-cv-1104, 2012 WL 4049484, at *8–9 (C.D. Ill. 2012) (partner installed spyware on plaintiff's computer to monitor his communications with others).

[7] Plaintiff's attempt to preemptively negate the Business Extension Exception (*see* FAC ¶¶ 32–36) is again, merely a "formulaic recitation" of the statutory exception and does not withstand scrutiny. *See Twombly*, 550 U.S. at 555.

§ 934.02(4)(a)(1); *Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins. Co.*, 924 F.2d 215, 217 (11th Cir. 1991). Plaintiff's own allegations establish that both requirements are met here.

First, the "Session Replay Provider"—here, ContentSquare—"that provided the session replay [software] to [Bose]" is an ECS.[8] (*See* FAC ¶ 32.) The FSCA defines an ECS as "any service which provides to users thereof the ability to send or receive wire or electronic communications." Fla. Stat. § 934.02(15). Multiple courts have found that software as a service (or "SaaS") companies qualify as an ECS where they provide the means of transferring information over the Internet and store it. *See, e.g.*, *TLS Mgmt. and Mktg. Servs., LLC v. Rodriguez-Toledo*, 260 F. Supp. 3d 154, 160–62 (D.P.R. 2016) (Dropbox constituted an ECS because it allowed users to send information over the Internet, stored it on its servers, and conveyed it from a private website to users); *Lane v. Brocq*, No. 15 C 6177, 2016 WL 1271051, at \*3, \*6 (N.D. Ill. Mar. 28, 2016) (SaaS companies SiteGround and DropBox constituted ECSs because they hosted "electronic files stored on cloud-based servers that were connected to the internet"); *Brown Jordan Int'l, Inc v. Carmicle*, No. 14-CV-60629, 2015 WL 11660246, at \*4 (S.D. Fla. June 3, 2015) (Microsoft Office 365, as a "cloud-based storage system[] accessed through the Internet," falls within the definition of ECS). Here, Plaintiff's allegations make clear that ContentSquare meets this definition. Specifically, Plaintiff claims that

---

[8] Plaintiff refers to the "session replay software" as "equipment" in the FAC, and thus waives any argument to the contrary. (*See* FAC ¶ 84.)

the session replay software at issue "copied and sent" "communications" transmitted "from Plaintiff's computer and/or mobile device to Defendant's computer servers," and "re-routed [them] to a storage file within the Session Replay Provider(s)'s server(s)." (FAC ¶ 38.) The "communications" were purportedly then made available to Bose, who "could" use them "to create a video playback of Plaintiff's visit to the website." (*Id.* ¶ 46.)

As to the second prong, session replay software is used by Bose in the ordinary course of its business. Florida courts define "ordinary course of business" broadly to encompass any use that is consistent with defendant's business. *See Royal Health*, 924 F.2d at 218 ("ordinary course of business" was satisfied where call recording occurred "pursuant to a standard . . . policy"); *Stalley v. ADS Alliance Data Sys., Inc.*, 997 F. Supp. 2d 1259, 1271 (M.D. Fla. 2014) (noting that "if the intercepted call was a business call, then the monitoring of it was in the ordinary course of business," and finding that conducting analytics on each call for quality assurance purposes fell within the exception); *State v. Nova*, 361 So. 2d 411, 413 (Fla. 1978) (a supervisor listening in on a call to check on a distressed employee was "for the benefit of the employer" and fell within the exception).[9] As in *Stalley*, Plaintiff here alleges that Bose uses session replay software analytics for core aspects of its website operations—i.e., "to monitor and discover broken

---

[9] Courts applying ECPA have also broadly applied it to cover interceptions "where the provider is furthering its 'legitimate business purpose'—including advertising—and is not limited to only those acts that are technically necessary." *See In re Google, Inc. Priv. Pol'y Litig.*, No. 12-01382, 2013 WL 6248499, at *11 (N.D. Cal. Dec. 3, 2013).

website features," "to increase engagement [on the Website], reduce operational costs, and maximize conversion rates." (*See* FAC ¶ 13.) Plaintiff further claims that the alleged interception was "routine[]" (*id.* ¶ 72) and that "[t]he session replay spyware was always active and intercepted every incoming data communication to Defendant's website the moment a visitor accessed the site." (*Id.* ¶ 31.) Indeed, session replay software "help[s] website operators understand how visitors interact with their site and [] identif[ies] user-interface problems." (RJN Exhibit B; *see also* RJN Exhibit C.) These allegations reinforce that the use of the session replay software was an ordinary part of Bose's business.[10]

### 3. The FSCA Does Not Apply Because Plaintiff Consented to the Alleged Interception of Data.

The FAC also fails to state a claim because "all of the parties to the communication ha[d] given prior consent to such interception." Fla. Stat. § 934.03(3)(d). Under the FSCA, consent may be express or implied based on whether the surrounding circumstances demonstrate that the recorded party knew of the recording. *Cf. Levin v. Red Rock Fin. Servs., LLC*, No. 70006, 2017 WL 519414, at *1 (Nev. App. 2017) (interpreting the FSCA); *see also In re Yahoo Mail*

---

[10] The Court should not give much weight to the recently-decided California case, *Alhadeff v. Experian Info. Sols., Inc.*, No. 8:21-cv-395 (C.D. Cal. May 25, 2021) (Carney, J.), denying a motion to dismiss under the FSCA. In just eight short paragraphs, the court incorrectly focused on whether the allegedly captured information was "communicative," as opposed to whether it conveyed the "substance" of the communication. *Id.* Further, Judge Carney declined to engage in any analysis regarding the issue of whether the plaintiff consented to the interception (*id.*), and did not have the benefit of any briefing on most of the arguments raised here, including, *inter alia*, whether the FSCA applies in this context and whether the Business Extension Exception applies to the claims. (*See* RJN Exhibit D.)

*Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) ("Consent to an interception under the [] Wiretap Act may be either explicit or implied . . . .").

By voluntarily using, interacting with, and (allegedly) typing information into the Website on multiple occasions (FAC ¶ 28), Plaintiff impliedly consented to Bose collecting that information. Indeed, many courts interpreting analogous two-party consent wiretapping statutes have found that the very nature of the Internet—which requires that data be recorded—inherently gives the receiving party consent to record the sender's communications. *See, e.g.*, *State v. Lott*, 879 A.2d 1167, 1172 (N.H. 2005) (finding that sender of email and instant messages gave implied consent to their interception because recording is a "necessary" part of these technologies); *State v. Townsend*, 57 P.3d 255, 260–62 (Wash. 2002) (finding the same, because any sender of an online communication "anticipates that it will be recorded" and understands that "computers are, among other things, a message recording device"). A Pennsylvania court put it best:

> This situation is unlike one in which a party is engaging in a conversation over the telephone. While engaging in a conversation over the telephone, a party would have no reason to believe that the other party was taping the conversation. ***Any reasonably intelligent person, savvy enough to be using the Internet, however, would be aware of the fact that messages are received in a recorded format, by their very nature, and can be downloaded or printed by the party receiving the message.*** By the very act of sending a communication over the Internet, the party expressly consents to the recording of the message.

*Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. Ct. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003); *see also State v. Glant*, 13 Wash. App. 2d 356, 364–67 (Wash. Ct. App. 2020) (applying *Townsend* to find implied consent). The same reasoning

applies here. As a repeated visitor to Bose's Website, Plaintiff was aware that his computer was sending "commands" "to [Bose's] computer servers utilized to operate [its] website," (FAC ¶ 28), and that by their very nature, these "commands" would be received in a recorded format.

Plaintiff also impliedly consented to the collection of his data through his eight visits to the Website (*id.* ¶ 25), because the Website's Privacy Policy—linked at the bottom of the page—explicitly disclosed Bose's collection practices. *See Townsend*, 57 P.3d at 261–62 (inferring consent to the privacy policy by the individual's familiarity with the technology); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, at *8–9 (9th Cir. 2018) (consent inferred where terms to which the user was bound disclosed the practice "collecting its users' data from third-party sites").

Bose had two versions of its Privacy Policy during 2020 when Plaintiff claims to have visited the Website, all of which disclosed the following:

- [We collect:] "Information You ***Provide*** to Us"

- ***[W]e and our service providers*** . . . ***may use a variety of technologies*** . . . ***to assist in collecting*** [certain] ***information***.

- When you use our ***websites***, ***we collect and analyze information*** such as . . . the number of ***clicks***, files you download, . . . landing pages, ***pages viewed*** and the order of those pages, the amount of time spent on particular pages, ***the terms you use in searches on our sites*** . . . .

- ***We, or our service providers***, ***use*** your information . . . to . . . [h]elp us better understand your interests and needs, and improve the Services . . .

(RJN Exhibits E F.) Plaintiff was thus expressly on notice of the very same tracking and collection practices he now complains of, and voluntarily consented to these practices when he repeatedly engaged with the Website. Further, contrary to

Plaintiff's suggestion otherwise (*see* FAC ¶¶ 59, 64), a privacy policy need not explicitly disclose the use of "session replay" technology. *See Javier v. Assurance IQ, Inc.*, 2021 WL 940319, at *2–4 (N.D. Cal. Mar. 9, 2021) (finding that the following language in a clickwrap agreement sufficiently disclosed the use of session replay technology on a website: "We also collect information about how you use our Services, such as the types of content you view or engage with or the frequency and duration of your activities"). The language in Bose's Privacy Policy is significantly more detailed than the disclosures in *Javier*.[11]

### 4.   Canons of Statutory Construction Warrant Dismissal of Plaintiff's FSCA Claim.

"Legislative intent is the polestar that guides a court's statutory construction analysis. . . . In attempting to discern legislative intent, we first look to the actual language used in the statute. . . . If the statutory language is unclear, we apply rules of statutory construction and explore legislative history to determine legislative intent." *Bautista v. State*, 863 So. 2d 1180, 1185 (Fla. 2003). Here, the FSCA's plain language, its legislative intent, and the Rule of Lenity make clear that the FSCA does not and should not apply to the conduct alleged here.

**<u>Plain language.</u>** Bose does not dispute that the FSCA was amended in 1988 to extend protection to "communications using new technologies" (FAC ¶¶ 3–6), and instead argues simply that the law should not be stretched beyond its plain

---

[11] Plaintiff's allegation that he did not have the opportunity to "opt out" or "consent" to the Privacy Policy (FAC ¶¶ 56–63) are belied by the fact that he repeatedly visited the Website and had multiple opportunities to read the Privacy Policy. Moreover, the FSCA does not require websites to offer an affirmative "opt out." *See* Fla. Stat. § 934.01, *et seq.*

meaning. Indeed, Plaintiff ignores a critical aspect of the amendment: namely, its specific exclusion from the definition of "electronic communications" of "[a]ny communication from an electronic or mechanical device which permits the **tracking of the movement** of a person or an object." Fla. Stat. § 934.02(12)(c).[12] Session replay software does just that—it tracks a shopper's movements as they browse an online store, just as a surveillance camera would track that shopper's movements through a brick and mortar store.

**Legislative intent.** The FSCA's legislative intent likewise does not support expansion to encompass Plaintiff's claims. "Enactment of [the FSCA] connotes a policy decision by the Florida legislature to allow each party to a conversation to have an expectation of privacy from interception by another party to the conversation." *O'Brien*, 899 So. 2d at 1135. To effectuate this intent, this Court should interpret the statute to apply only in instances where an individual has a **reasonable** expectation of privacy. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321 (11th Cir. 2006) (narrow reading of the SCA was consistent with congressional intent where a broad reading would open "the floodgates of litigation" to nearly every user of the Internet); *ACA Int'l v. FCC*, 885 F.3d 687, 698 (D.C. Cir. 2018) (narrowly interpreting the Telephone Consumer Protection Act where an expansive view would be incompatible with the legislative purpose); *United States v. Steiger*, 318 F.3d 1039, 1047–50 (11th Cir. 2003) ("[U]nder the narrow reading

---

[12] On its face, the definition of "electronic communications" does not include the Internet.

of the Wiretap Act we adopt from the Fifth and Ninth Circuits, **very few** seizures of electronic communications from computers will constitute 'interceptions.'")

The FAC claims that Plaintiff had a "reasonable expectation of privacy" in his visits to the Website (FAC ¶¶ 29, 88), but it is devoid of facts showing the **reasonableness** of this purported expectation that information voluntarily provided to Bose would remain private from Bose. Indeed, Plaintiff does not allege that he entered any purchasing information on the Website, and thus it is difficult to imagine what aspect of his browsing a retailer's website could reasonably be deemed private. *See, e.g.*, *United States v. Taylor*, 935 F.3d 1279, 1182, 1184 n.4 (11th Cir. 2019) (no reasonable expectation of privacy in "browsing the open internet," which is akin to "traveling along . . . public highways"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1039 (no reasonable expectation of privacy where the plaintiff did not allege facts about the contents and circumstances surrounding the communication at issue); *Commonwealth v. Diego*, 119 A.3d 370, 377 (Pa. Super. Ct. 2015) (no reasonable expectation of privacy because the "very nature" of sending a text message gives notice that the communication will automatically be recorded). Nor could Plaintiff remedy this pleading defect, as there is no reasonable expectation of privacy in matters voluntarily submitted to third parties. *See Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) (the Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties").

**Deference to the legislature.** The unwarranted expansion of law

Plaintiff seeks is contrary to the judiciary's role in statutory interpretation. *See Minotty*, 42 So. 3d at 830, 832 (discussing the FSCA: "[I]t is up to the Legislature, if it so chooses, to expand the civil cause of action"); *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) ("[T]he role of the judicial branch is to apply statutory language, not to rewrite it."). Plaintiff seeks to turn the FSCA—a criminal wiretap statute—into an all-encompassing data privacy and collection statute, like California's Consumer Privacy Act ("CCPA") and the EU's General Data Protection Regulation. *Compare, e.g.*, FAC ¶ 52 (Plaintiff was "never given the option to opt out") *with* CCPA § 1798.120 (requiring that consumers have the right to opt out of data collection). But that is not the law in Florida. *See* Florida Information Protection Act, Fla. Stat. § 501.171. Indeed, the Florida Legislature recently contemplated passing ***new*** legislation that would make this the law, distinguishing it from the statutes currently in place (like the FSCA). *See* S.B. 1734, 2021 Leg. Reg. Sess. (Fl 2021) and H.B. 969, 2021 Leg. Reg. Sess. (Fl 2021). Thus, this Court should avoid expanding the FSCA and defer to the Legislature. *See State v. Dade Cnty. By Bd. of Cnty. Comm'rs, Dade Cnty. Port Auth.*, 210 So. 2d 200, 203 (Fla. 1968) ("It would be presumptuous and most improper for us to invade the prerogative of the Legislature.").

**Rule of Lenity**. The sweeping statutory interpretation Plaintiff invites this Court to adopt violates another canon of statutory construction: the Rule of Lenity. That doctrine forms "a 'fundamental tenet of Florida law regarding the construction of criminal statutes, which weighs in favor of the defendant.'" *State*

*v. Weeks*, 202 So. 3d 1, 8 (Fla. 2016). It requires that "[a]ny ambiguity or situations in which statutory language is susceptible to differing constructions ***must*** be resolved in favor of the person charged with an offense." *Id.* at 8–9. The Rule of Lenity exists for two fundamental reasons—first, "because of the seriousness of criminal penalties"; and second, because "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *United States v. Bass*, 404 U.S. 336, 348 (1971).

Here, Plaintiff alleges no harm whatsoever, and yet seeks to hold Defendant liable under a criminal statute that imposes severe civil penalties of at least $1,000 per putative class member (*see* FAC ¶ 89) that are punitive in nature. Indeed, the FAC seeks "punitive statutory damages." (*Id.* at Prayer for Relief ¶ d.) At a minimum, it is ambiguous whether the FSCA applies to the alleged interception of the electronic communications at issue here. *See United States v. Hochman*, 809 F. Supp. 202, 204–05, 208 (E.D.N.Y. 1992) (finding it ambiguous whether "satellite cable programming" are "electronic communications" under ECPA, and granting motion to dismiss because the Court "cannot with confidence conclude that the Wiretap Law sanctioned [defendant's] conduct"). The Court should thus apply the Rule of Lenity to resolve any ambiguity in favor of Defendant.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Bose's Motion and dismiss the FAC with prejudice.

## <u>Local Rule 3.01(g) Certification</u>

I hereby certify that I conferred telephonically on June 4, 2021 with Plaintiff's counsel to resolve the issues raised herein and that Plaintiff opposes the relief sought herein.

Respectfully submitted,

/s/ Ashley Bruce Trehan
Ashley Bruce Trehan, FBN 0043411
ashley.trehan@bipc.com
Jordan D. Maglich, FBN 0086106
jordan.maglich@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401 E. Jackson Street, Suite 2400
Tampa, FL 33602
Tel: (813) 228-8180
Fax: (813) 229-8189

and

COOLEY LLP
Aarti Reddy, CA Bar No. 274889
(admitted *pro hac vice*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:  +1 415 693 2000
Facsimile:   +1 415 693 2222
Email:        areddy@cooley.com

*Attorneys for Defendant*
*Bose Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2021, I electronically filed the foregoing and

its attachment with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to the following counsel of record:

Andrew J. Shamis, Esq.
ashamis@shamisgentile.com
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, Florida 33132

Manuel Hiraldo, Esq.
MHiraldo@Hiraldolaw.com
HIRALDO P.A.
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301

Scott Edelsberg, Esq.
scott@edelsberglaw.com
EDELSBERG LAW, PA
20900 NE 30th Ave., Suite 417
Aventura, FL 33180

*Attorneys for Plaintiff*

/s/ Ashley Bruce Trehan
Ashley Bruce Trehan, FBN 0043411
ashley.trehan@bipc.com
Jordan D. Maglich, FBN 0086106
jordan.maglich@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401 E. Jackson Street, Suite 2400
Tampa, FL 33602
Tel: (813) 228-8180
Fax: (813) 229-8189
*Attorneys for Defendant Bose
Corporation*

250966640