John A. Vogt (State Bar No. 198677)
javogt@jonesday.com
Ryan D. Ball (State Bar No. 321772)
rball@jonesday.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA 92612.4408
Telephone: +1.949.851.3939
Facsimile: +1.949.553.7539

Yaakov M. Roth (*pro hac vice*)
yroth@jonesday.com
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Telephone: +1.202.879.7658
Facsimile: +1.202.626.1700

Attorneys for Defendant
Experian Information Solutions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT ALHADEFF, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No. 8:21-cv-00395-CJC-KES<br>Judge Cormac J. Carney<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing:  June 7, 2021<br>Time:  1:30 p.m.<br>Location:  Courtroom 9B |

# **TABLE OF CONTENTS**

PAGE

INTRODUCTION ........................................................................ 1

BACKGROUND ......................................................................... 2

LEGAL STANDARD ................................................................. 3

ARGUMENT .............................................................................. 4

    I.    EXPERIAN DID NOT ENGAGE IN UNLAWFUL "INTERCEPTION" ............... 4

    II.    EXPERIAN DID NOT INTERCEPT THE "CONTENTS" OF ANY COMMUNICATION .................................................................. 7

    III.    ALHADEFF DOES NOT PLAUSIBLY ALLEGE "USE" OF THE INFORMATION ...................................................... 10

CONCLUSION ......................................................................... 11

# <u>TABLE OF AUTHORITIES</u>

**Page**

C**ASES**

*Armstrong v. S. Bell Tel. & Tel. Co.*,
　366 So.2d 88 (Fla. 1st DCA 1979)...............................................................................8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ...............................................................................................3, 10

*Chevron Corp. v. Donziger*,
　No. 12-mc-80237, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ............................9

*Compton v. Countrywide Fin. Corp.*,
　761 F.3d 1046 (9th Cir. 2014).....................................................................................3

*Conte v. Newsday, Inc.*,
　703 F. Supp. 2d 126 (E.D.N.Y. 2010) .........................................................................4

*Crowley v. CyberSource Corp.*,
　166 F. Supp. 2d 1263 (N.D. Cal. 2001) ....................................................................4, 5

*Goodman v. HTC Am., Inc.*,
　No. C11-1793, 2012 WL 2412070 (W.D. Wash. June 26, 2012)............................10

*In re Facebook, Inc. Internet Tracking Litig.*,
　956 F.3d 589 (9th Cir. 2020).....................................................................................10

*In re Gilead Scis. Sec. Litig.*,
　536 F.3d 1049 (9th Cir. 2008)......................................................................................3

*In re Google Assistant Priv. Litig.*,
　457 F. Supp. 3d 797 (N.D. Cal. 2020) .........................................................................6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
　806 F.3d 125 (3d Cir. 2015) .........................................................................................5

*In re iPhone Application Litig.*,
　844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................8

*In re Vizio, Inc., Consumer Priv. Litig.*,
　238 F. Supp. 3d 1204 (C.D. Cal. 2017).....................................................................10

*In re Zynga Priv. Litig.*,
　750 F.3d 1098 (9th Cir. 2014)......................................................................................7

*Javier v. Assurance IQ, LLC*,
    No. 20-cv-2860, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021)......................................................4

*Marsh v. Zaazoom Sols., LLC*,
    No. C-11-5226, 2012 WL 952226 (N.D. Cal. Mar. 20, 2012)................................................4, 5

*Stalley v. ADS All. Data Sys., Inc.*,
    296 F.R.D. 670 (M.D. Fla. 2013)...............................................................................................4

*State v. Tsavaris*,
    394 So. 2d 418 (Fla. 1981)......................................................................................................6, 7

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ........................................................................................9

*United States v. Koyomejian*,
    970 F.2d 536 (9th Cir. 1992)..................................................................................................8, 9

*United States v. Larios*,
    593 F.3d 82 (1st Cir. 2010) .......................................................................................................8

*Yunker v. Pandora Media, Inc.*,
    No. 11-cv-3113, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ...............................................4

**INTRODUCTION**

Defendant Experian Information Solutions, Inc. operates a website that provides consumers with information about their credit history, often for free. Plaintiff Albert Alhadeff claims he visited the website approximately fifty times during the past year. According to Alhadeff, during one or more of his fifty visits, Experian used "session replay" software to monitor and record his interactions with the website, specifically his "mouse clicks and movements, keystrokes, search terms, information inputted by [him], pages and content viewed by [him], scroll movements, and copy and paste actions." (ECF 18 ("FAC") ¶¶ 26, 35.) Experian, in other words, allegedly employed software code to keep a record of how visitors navigated through its site. Alhadeff acknowledges that session replay technology has been ubiquitous for years, and serves valuable purposes by enabling websites to better understand the user experience, review functionality, and improve website features. (*Id.* ¶¶ 11, 14.) But he maintains that it violates Florida's analogue to the federal Wiretap Act, and qualifies as "one of the most egregious … Internet privacy violations." (*Id.* ¶ 1.)

Alhadeff's rhetoric is overblown, and his sweeping theory is legally wrong. Florida's Security of Communications Act ("FSCA")—which is principally a *criminal* wiretap law—does not outlaw this common website tool. To start, Experian cannot "intercept" communications *to itself*—yet it is the only possible recipient of "communications" by Alhadeff. Moreover, Experian cannot intercept the "content" of communications that *have no substantive content*, such as the "mouse clicks and movements" and other activities that the complaint highlights. The technology that Alhadeff complains about is the virtual equivalent of a brick-and-mortar store using video surveillance to record and analyze how shoppers move throughout the aisles, which displays they stop to look at, and what items they ultimately choose to buy. Yet it is well-established that such conduct does not run afoul of the FSCA because it does not *intercept* the *content* of communications. So too, Experian did not violate the FSCA by allegedly recording Alhadeff's visit to its website.

At bottom, the complaint targets common software that the FSCA never meant to reach, much less criminalize. And its theory threatens an array of technologies that enable websites to perform their basic functions of receiving, responding to, and collecting users' clicks, movements, and submissions. The Court should dismiss.

## **BACKGROUND**

Experian is a corporation with its principal place of business in California. (FAC ¶ 18.) Its website—www.experian.com—provides various services and tools for consumers, such as free credit scores, credit monitoring, and identity theft protection. Based on his experience with that website, Alhadeff sued Experian in January 2021, and filed the operative amended complaint in April 2021.

Rather than detailing Alhadeff's experience with the Experian website, much of the complaint discusses "session replay" technology *in general*. Alhadeff alleges that such technology enables website operators "to record and playback individual browsing sessions," including "the interactions of visitors on their website" and their "mouse movements, keystrokes and clicks, search terms, content viewed, and information inputted by the website visitor." (*Id.* ¶¶ 9–10.) Alhadeff admits that session replay technology has been common for years, having been discussed by "countless" articles dating back to 2017. (*Id.* ¶ 14.) As those articles explain, many websites use this technology to determine "how users interact with their content," which enables them to "make their websites more user-friendly." Stewart, *Session Replay Scripts Could Be Leaking Sensitive Data*, MEDIUM (April 4, 2018) (cited by FAC ¶ 14). For example, if online shoppers regularly run into a "glitch" during the checkout process, "[a]nalyzing the user's behavior during the 'problematic' session helps website owners and marketers make modifications that make purchasing easy for the customer." Salim, *Website Owners Can Monitor Your Every Scroll and Click*, DIGITAL INFORMATION WORLD (Feb. 18, 2020) (cited by FAC ¶ 14). Alhadeff agrees that the technology serves valuable purposes, like helping to fix "broken website features," but adds that some use it to "turn a profit." (FAC ¶ 11.)

Following this general discussion, Alhadeff offers only a few allegations that are specific to Experian. He says he visited Experian's website "approximately fifty times." (*Id.* ¶ 23.) "Upon information and belief, during one or more" of his visits, Experian "utilized" session replay software to "intercept" his communications with the website, including "mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, pages and content viewed by Plaintiff, and scroll movements, and copy and paste actions." (*Id.* ¶ 35; *see id.* ¶¶ 26, 80.) Alhadeff also asserts that these communications were "copied and sent and/or re-routed" to servers owned by the "Session Replay Provider," an unidentified third party that allegedly provided the script. (*Id.* ¶¶ 29, 36.) All of this conduct allegedly took place without prior notice to Alhadeff. (*See id.* ¶¶ 6, 27–28, 47, 55.) *But see infra* at n.3.

Based on these allegations, Alhadeff asserts one claim under the FSCA's civil cause of action. He primarily contends that Experian violated the prohibition on "intercept[ing]" "any wire, oral, or electronic communication," with "intercept[ion]" defined as the acquisition of the "contents" of communications. Fla. Stat. Ann. §§ 934.03(1)(a), 934.02(3). (*See* FAC ¶ 80.) Alhadeff also suggests that Experian unlawfully "use[d]" the "contents" of electronic communications with knowledge they were obtained through such "interception." Fla. Stat. Ann. § 934.03(1)(d). (*See* FAC ¶¶ 74, 82.) He seeks statutory damages and declaratory and injunctive relief for himself and on behalf of a putative class of Florida residents. (*Id.* ¶¶ 62, 84–85.)

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Compton v. Countrywide Fin. Corp.*, 761 F.3d 1046, 1054 (9th Cir. 2014). Neither "formulaic recitation of the elements of a cause of action" nor "naked assertion[s]" devoid of "further factual enhancement" suffices. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While well-pleaded allegations are assumed true, "conclusory" allegations or "unreasonable inferences" are not. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

# ARGUMENT

To state a claim, Alhadeff must plausibly allege that Experian intentionally (1) "intercept[ed]" (2) the "contents" of an electronic communication or (3) "use[d]" the contents of an unlawfully intercepted communication. Fla. Stat. Ann. §§ 934.03(1)(a), (1)(d), 934.02(3). On each of these critical statutory elements, the amended complaint falls far short.

## I. EXPERIAN DID NOT ENGAGE IN UNLAWFUL "INTERCEPTION"

To start, Alhadeff's claim fails because Experian never "intercept[ed]" any communications. Fla. Stat. Ann. § 934.03(1)(a), (d). That is so because, as a matter of both law and common sense, Experian cannot "intercept" communications *made to Experian itself*. To put a finer point on it, Experian cannot "intercept" messages sent to it through its website any more than a pen pal can "intercept" a letter addressed to her by a friend or a wide receiver can "intercept" a pass thrown to him by his own quarterback. There is a plain and critical difference between merely *receiving* a communication (which is proper) and *intercepting* it (which is unlawful).

Cases involving the federal Wiretap Act's analogous provisions bear out this intuitive point.[1] As those cases explain, "interception" occurs when someone captures a communication "to *another* party." *Marsh v. Zaazoom Sols., LLC*, No. C-11-5226, 2012 WL 952226, at *17 (N.D. Cal. Mar. 20, 2012) (emphasis in original). No such "interception" occurs, however, when a communication is received by the "intended recipient," also known as the "'second party" to the communication. *Id.* (quoting *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001)); *accord Yunker v. Pandora Media, Inc.*, No. 11-cv-3113, 2013 WL 1282980, at *7–8 (N.D. Cal. Mar. 26, 2013); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 140 (E.D.N.Y. 2010); *see also Javier v. Assurance IQ, LLC*, No. 20-cv-2860, 2021 WL

---

[1] The FSCA was "modeled after" the federal Wiretap Act, and courts therefore apply Wiretap Act precedents in FSCA cases. *See Stalley v. ADS All. Data Sys., Inc.*, 296 F.R.D. 670, 685 n.3 (M.D. Fla. 2013).

940319, at \*4 n.5 (N.D. Cal. Mar. 9, 2021) (dismissing complaint under California's state-law analogue against a "party to the communications"). Indeed, it would be "untenable" as a practical matter—to understate matters quite considerably—to hold that parties somehow unlawfully (and criminally) "intercept" communications just by *receiving* them. *Crowley*, 166 F. Supp. 2d at 1269.

Here, Experian is the "second party" to the alleged communications. Alhadeff repeatedly admits as much, acknowledging that this suit involves Experian's alleged use of session replay software "to intercept [his] … electronic computer-to-computer data communications *with [Experian's] website*" or "*to [Experian's] computer servers utilized to operate the website*." (FAC ¶¶ 5, 26 (emphasis added).)[2] And it has to be true. "Tautologically, a communication will always consist of at least two parties": the "speaker" and the "recipient." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015). To the extent that Alhadeff was communicating with anyone through his activities on Experian's website, he was communicating with Experian. As a party to the alleged communications, Experian could not have intercepted them. *See Marsh*, 2012 WL 952226, at \*17.

Contending that Experian nevertheless "intercepted" its own communications, Alhadeff invokes *O'Brien v. O'Brien*, 899 So. 2d 1133 (Fla. 5th DCA 2005). (FAC ¶ 6.) But *O'Brien* supports Experian. In that case, a wife installed spyware software on her husband's computer to record his online chat conversations, instant messages, and emails "*with another woman*." 899 So. 2d at 1134 (emphasis added). The court held that the wife committed an "interception" by obtaining "communications between the [h]usband and another woman." *Id.* at 1134, 1137. Here, by contrast, there is no allegation that Experian intercepted any communications *between others*;

---

[2] *See also, e.g.*, FAC ¶¶ 7, 29 ("communication[s] to [Experian's] website"); *id.* ¶ 26 ("commands sent by [Alhadeff's] computer/mobile device to [Experian's] servers"); *id.* ¶¶ 35, 83 ("[Alhadeff's] electronic communications with [Experian's] website"); *id.* ¶ 55 ("interactions with [Experian's] website"); *id.* ¶¶ 28, 34, 39 (similar).

Alhadeff is instead adamant that Experian intercepted communications between him *and Experian*.

The decision in *State v. Tsavaris*, 394 So. 2d 418 (Fla. 1981) (per curiam), is likewise inapposite. There, a murder defendant moved to suppress a tape recording of a call he made to the medical examiner regarding the victim's autopsy. *Id*. at 420. The examiner answered the call on speaker phone in the presence of a detective investigating the defendant, and also turned on a recording device and asked the defendant to identify himself. *Id*. *Tsavaris* found a violation, holding that a party to an *oral conversation* could "intercept" that conversation by *secretly recording it*.

Unlike a secretly recorded oral conversation, however, communications with a website necessarily occur *electronically*. While it might make some sense to say that a person "intercepts" his own conversation by using an external device to secretly record it, it makes no sense to say that Experian's website "intercept[ed]" Alhadeff's button clicks by logging and executing them, any more than one "intercepts" an e-mail by storing it in one's inbox. That is just how computers communicate.

Furthermore, even if *Tsavaris* applied in this context, judicially-noticeable facts establish that Alhadeff's interactions with Experian's website were not *secretly* recorded. As the amended complaint and "countless" articles attest, it has long been widely known that consumer websites often rely on session replay software that collects detailed information about website visits. (FAC ¶ 14.) And Experian openly discloses as much in the privacy policy on its website. (*See* ECF 11-2 at 2–3.)[3] The specific policy applicable here is called the "Ask Experian" privacy policy, which

---

[3] Because Alhadeff's complaint is based on Experian's website—including the allegations that the website did not provide adequate "notice" through its "terms and policies and privacy policy" (FAC ¶¶ 47, 58)—it incorporates by reference the contents of the website, including its privacy policy. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813-14 (N.D. Cal. 2020). A copy of the privacy policy in effect during Aldaheff's alleged visits to experian.com is attached as Exhibit 1 to the Declaration of David Williams. Experian requests that the Court take judicial notice of this privacy policy.

"describes [Experian's] practices in connection with information that [it] collect[s] through [its] website." (*Id.* at 3, 5.) This policy was in effect when Plaintiff allegedly visited Experian.com. (*See id.* at 3; FAC ¶ 23.) It provides that "[b]y using the website, you agree to the terms of this Policy. If you do not agree to the terms of this Policy, please do not use the website." (ECF 11-2 at 3, 5.) It then discloses that the site "collect[s] personal information and non-personal information" and explains how the website does so and for what purposes. (*Id.*)

Because the information that Alhadeff claims Experian wrongfully intercepted falls within the scope of the privacy policy, there was no "secret" recording as a matter of law. Even if Alhadeff never bothered to review the privacy policy during any one of his "fifty" visits to experian.com, he could never plausibly allege that the alleged interception was done in "secret," as in *Tsavaris*. Similarly, while Alhadeff complains that the privacy policy was not displayed through a "pop-up notification" or other sufficiently "conspicuous" device (FAC ¶¶ 56–59), that does not render the policy or alleged interception a "secret." (It does confirm, however, that accepting Alhadeff's theory would require virtually all websites to impose such automatic pop-up notifications before allowing visitors to browse.)

In short, because Experian did not engage in any unlawful interception, and Aldaheff could never so allege, this suit should be dismissed with prejudice.

## II.   EXPERIAN DID NOT INTERCEPT THE "CONTENTS" OF ANY COMMUNICATION

Independent of the foregoing, dismissal is warranted for yet another reason: Alhadeff does not plausibly allege that Experian intercepted any communicative "content," which is all the statute protects. Fla. Stat. Ann. §§ 934.03(1)(a), (1)(d), 934.02(3). The "[c]ontents of a communication are defined to be "the substance, purport, or meaning of that communication." *Id.* § 934.02(7). In other words, the statute protects from interception one's "intended message to another," such as the "meaning conveyed" by a letter or phone conversation. *In re Zynga Priv. Litig.*, 750

F.3d 1098, 1106 (9th Cir. 2014). But the statute does not protect *non-communicative* information that merely accompanies a message.

Minotty v. Baudo* illustrates this fundamental distinction. There, a disgruntled doctor secretly recorded his colleagues' confidential meetings—including with their patients—but the equipment failed to capture the audio of their conversations. 42 So. 3d 824, 830–32 (Fla. 4th DCA 2010). The Florida appellate court rejected the colleagues' claim under the FSCA, explaining that their adversary had captured only their "physical conduct"—that is, video of their motions *while communicating*—rather than "the *substance* of a particular communication." *Id.* (emphasis in original); *see also id.* ("recording of electrical impulses signifying the phone numbers called," rather than substance of the communication, is not actionable under the FSCA); *see also Armstrong v. S. Bell Tel. & Tel. Co.*, 366 So. 2d 88, 90 (Fla. 1st DCA 1979).

The Ninth Circuit has reached the same conclusion under the federal Wiretap Act. Under that statute's "plain meaning," the recording of "video images"—without "audio"—does not intercept the "contents" of a communication. *United States v. Koyomejian*, 970 F.2d 536, 539–40 (9th Cir. 1992) (en banc); *see also United States v. Larios*, 593 F.3d 82, 90 (1st Cir. 2010) (recounting that "[e]very circuit" to address the issue agrees). Video surveillance might capture sensitive information about a person—*e.g.*, which doctors she visits—but it does not intercept the "the substance, purport, or meaning" of any communication, and so does not implicate the Act.

The same rationale applies to other "characteristics of the message" that often accompany a communication, but do not disclose its meaning. *In re Zynga*, 750 F.3d at 1106–07. These include the names of the parties; the date, time, and length of the communication; and metadata about the message or its delivery. *See id.*; 2 Wayne R. LaFave et al., Criminal Procedure § 4.6(b) (4th ed. 2020). Courts have thus held that there is no interception of "content" when iPhones collect "geolocation data" during use. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061–62 (N.D. Cal. 2012). Courts also have held that personal "identifying information" and

"Internet usage" data are not communicative "content." *Chevron Corp. v. Donziger*, No. 12-mc-80237, 2013 WL 4536808, at *2, *6 (N.D. Cal. Aug. 22, 2013).

Here, Alhadeff does not plausibly allege that Experian captured the "contents" of *any* communications. He principally claims that Experian recorded what he "did" and "looked at" on the website, specifically his "mouse clicks and movements," "scroll movements," "copy and paste actions," "keystrokes," and the "pages and content [he] viewed." (FAC ¶¶ 5, 35.) But Alhadeff's movements around Experian's website, as well as information about what he viewed there, concern his *conduct* while visiting the site, not "the *substance* of a particular communication." *Minotty*, 42 So. 3d at 830. Monitoring that conduct—like silent video surveillance of a trip to a store—does not violate the FSCA. *See id.* at 830–832; *Koyomejian*, 970 F.2d at 539–40. A store's video surveillance captures detailed "session replays": It records shoppers' personal characteristics, their "actions" and "movements" around the store, the displays they're interested in and their "interact[ions]" with others, and the items they "view[]" and select (or "click[]" on). (*Cf.* FAC ¶¶ 5, 35.) Still, such surveillance is lawful because it does not capture communicative "content," and the same goes for the recording alleged here. *See Minotty*, 42 So. 3d at 830–32; *Koyomejian*, 970 F.2d at 539–40; *see also Armstrong*, 366 So. 2d at 90 (calling it "so well settled" that a "device that merely records the number dialed"—rather than the subsequent phone conversations—is not "contrary to the provisions of the statute").

Alhadeff also contends that Experian intercepted "information inputted by Plaintiff" and his "search terms." (FAC ¶¶ 5, 35.) But just like his original complaint, the amended complaint says *nothing* about what specific information he entered or searched, thus making it impossible to tell whether it qualifies as communicative "content." The mere fact that he typed something is not sufficient. *See Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) ("information" does not constitute communicative "content" merely because it was "input by means of a form interface"). Indeed, Alhadeff's allegations in this regard are so generic that

they could be leveled against nearly any website. Absent "further factual enhancement," this "naked assertion[]" does not state a viable claim either. *Iqbal*, 556 U.S. at 678.

In short, because Aldeheff still fails to plead facts establishing that Experian intercepted the "content" of any communication, his claim under the FSCA fails.

## III.   ALHADEFF DOES NOT PLAUSIBLY ALLEGE "USE" OF THE INFORMATION

No less conclusory is Alhadeff's oblique attempt to create liability on the ground that Experian intentionally "use[d]" the contents of an unlawfully intercepted communication in violation of FSCA § 934.03(1)(d).

Just like the original complaint, the amended complaint recites this element, asserting "[u]pon information and belief" that Experian "used" the allegedly intercepted communications "to market its services and goods to Plaintiff." (FAC ¶ 82.) But that is still all it says. Alhadeff does not identify what Experian supposedly did with his information or how Experian used the information for marketing. In fact, Alhadeff does not allege a single instance in which Experian "market[ed] its services and goods" to him (whether using his information or not). Alluding to a vague "marketing" purpose is not sufficient to establish intentional "use" of Alhadeff's information. *See Iqbal*, 556 U.S. at 678; *cf. In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1212–13 (C.D. Cal. 2017) (alleging sale of particular consumer data to third parties); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (alleging sale of "personal profiles" of website visitors to advertisers); *Goodman v. HTC Am., Inc.*, No. C11-1793, 2012 WL 2412070, at *1, *15 (W.D. Wash. June 26, 2012) (alleging sale of "individualized profiles" of smartphone users to third parties).

To be sure, Alhadeff discusses various ways in which *other* companies have used session replay technologies. He notes that some companies create "profile[s]" of website visitors, for example. (FAC ¶ 11.) Alhadeff also quotes ContentSquare, a company that alleged in unrelated litigation that its software "transforms" website

user information into "profitable actions" that reduce costs, increase engagement, and influence user activity. (*Id.* (quoting Compl. ¶ 8, *Content Square SAS v. Quantum Metric, Inc.*, No. 20-cv-0832 (D. Del. June 22, 2020), ECF No. 1).) But Alhadeff does not tie either of these allegations to Experian in any way. He does not allege any connection between ContentSquare and Experian, or that Experian uses software made by ContentSquare or anyone else in a similar way, or that Experian has created or sold user profiles. The fact that different companies have put different software to different uses is categorically irrelevant to this case, and certainly does not render plausible Alhadeff's conclusory claim that Experian "used" his information here.

## CONCLUSION

Rather than opposing Experian's previous motion to dismiss, Alhadeff voluntarily amended his complaint. But the amended complaint does nothing to cure the pleading deficiencies that plagued the original version. Indeed, apart from citing to the actions of *other* companies and *other* websites unmoored to *Experian* or *its website*, the amended complaint is a carbon copy of the original. As the allegations have not improved with time or repetition, Experian respectfully requests that the Court grant this motion in full, and dismiss this case with prejudice.

Dated: May 5, 2021

JONES DAY

By: */s/ John A. Vogt*
    John A. Vogt

Attorney for Defendant
Experian Information Solutions, Inc.